# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# CHATTANOOGA DIVISION

| | |
|---|---|
| JEREMY WIGGINS, Individually and For Others Similarly Situated,<br><br>　　Plaintiff,<br><br>v.<br><br>JEDSON ENGINEERING, INC.,<br><br>　　Defendant. | **Case No.** _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Jeremy Wiggins (Wiggins) brings this lawsuit against Jedson Engineering, Inc. (Jedson) for failing to pay overtime as required by the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. Wiggins and the Putative Class Members (as defined below) regularly worked more than 40 hours in a week.

3. But Jedson did not pay these workers overtime for hours worked in excess of 40 hours in a single workweek as required by the FLSA.

4. Instead, Jedson paid these workers the same hourly rate for all hours worked, including those in excess of 40 in a workweek (straight time for overtime).

5. Wiggins and the Putative Class Members never received a guaranteed salary.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the claim occurred in this District and Division.

9. Wiggins worked for Jedson in this District and Division.

10. Specifically, Wiggins worked for Jedson in and around Calhoun, Tennessee.

11. Wiggins regularly worked overtime for Jedson in and around Calhoun, Tennessee.

12. Despite regularly working over 40 hours, Jedson paid Wiggins straight time for overtime in and around Calhoun, Tennessee.

## THE PARTIES

13. Wiggins worked for Jedson as a Construction Manager from approximately September 2016 until February 2017.

14. Wiggins worked for Jedson in Tennessee.

15. Wiggins' written consent is attached as Exhibit A.

16. Throughout Wiggins' employment with Jedson, Jedson paid him the straight time for overtime.

17. Wiggins brings this action on behalf of himself and all other similarly situated workers who were paid by Jedson's straight time for overtime pay scheme.

18. Jedson paid each of these workers the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek, in violation of the FLSA.

19. The class of similarly situated employees sought to be certified is defined as follows:

**All employees of Jedson who were paid the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or "straight time for overtime") at any time in the last 3 years (Putative Class Members).**

2

20. Defendants **Jedson Engineering, Inc.** is an Ohio corporation doing business throughout the United States, including Tennessee. Jedson may be served with process by serving its registered agent: **National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee 37919-5546**.

## COVERAGE UNDER THE FLSA

21. At all relevant times, Jedson was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all relevant times, Jedson was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all relevant times, Jedson was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment - that have been moved in or produced for commerce.

24. At all relevant times, Jedson had an annual gross volume of sales made in excess of $1,000,000.

25. At all relevant times, Wiggins and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## THE FACTS

26. Jedson is an "integrated engineering, procurement, and construction management (EPCm) company[.]"[1]

---

[1] https://jedson.com/about/ (last visited December 9, 2019).

3

Case 1:19-cv-00354-DCLC-CHS   Document 1   Filed 12/10/19   Page 3 of 10   PageID #: 3

27. To complete its business objectives, Jedson hires personnel, such as Wiggins, to perform construction management services.

28. Many of these individuals worked for Jedson and were paid under Jedson's straight time for overtime pay scheme.

29. These straight time for overtime workers make up the proposed Putative Class.

30. For example, Wiggins worked for Jedson as a Construction Manager from approximately September 2016 until February 2017.

31. Throughout his employment, Jedson paid him the same hourly rate for all hours worked, including those in excess of 40 in a single workweek.

32. As a Construction Manager, Wiggins spent his time ensuring that construction projects were completed in accordance with Jedson (or its clients') specifications.

33. Wiggins did not have any supervisory duties.

34. Wiggins did not hire or fire employees.

35. Wiggins did not exercise discretion and judgment as to matters of significant.

36. Wiggins was a blue-collar worker.

37. Wiggins and the Putative Class Members were required to adhere to Jedson (or its clients') policies and procedures.

38. At all relevant times, Jedson maintained control, oversight, and direction of Wiggins and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

39. Likewise, Jedson (or its clients) control Wiggins and the Putative Class Members' work.

40. Jedson paid Wiggins and the Putative Class Members under its straight time for overtime pay scheme.

41. Wiggins and the Putative Class Members did not receive a salary.

42. If Wiggins or the Putative Class Members worked fewer than 40 hours in a week, they were only paid for the hours worked.

43. Wiggins and the Putative Class Members regularly worked over 40 hours in a week.

44. In fact, Wiggins routinely worked 72 to 84 hours per week.

45. Wiggins' schedule is typical of the Putative Class Members.

46. Instead of paying overtime, Jedson paid Wiggins and the Putative Class Members the same hourly rate for the hours he worked over 40 in a work week.

47. Wiggins and the Putative Class Members worked in accordance with the schedule set by Jedson and/or its clients.

48. The hours Wiggins and the Putative Class Members worked are reflected in Jedson's records.

49. Rather than receiving time and half as required by the FLSA, Wiggins and the Putative Class Members only received "straight time" pay for the hours they worked in excess of 40 in a workweek.

50. Jedson's "straight time for overtime" payment scheme violates the FLSA because it deprives Wiggins and the Putative Class Members of overtime at a rate of 1 ½ their regular rates for the hours they work in excess of 40 hours in a single workweek.

51. Jedson knew Wiggins and the Putative Class Members worked more than 40 hours a week.

52. Jedson knew, or showed reckless disregard for whether, the Putative Class Members were entitled to overtime under the FLSA.

53. Nonetheless, Jedson did not pay Wiggins and the Putative Class Members overtime as required by the FLSA.

54. Jedson knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

55. The illegal "straight time for overtime" pay practice that Jedson imposed on Wiggins was likewise imposed on the Putative Class Members.

56. Dozens of individuals were victimized by Jedson's pattern, practice, and policy which is in willful violation of the FLSA.

57. Numerous other individuals who worked with Wiggins indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

58. Based on his experiences and tenure with Jedson, Wiggins is aware that Jedson's illegal practices were imposed on the Putative Class Members.

59. The Putative Class Members were all not afforded overtime compensation when they worked in excess of 40 hours in a week.

60. Jedson's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

61. Wiggins' experiences are therefore typical of the experiences of the Putative Class Members.

62. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

63. Wiggins has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Wiggins has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

64. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

65. Absent this action, many Putative Class Members likely will not obtain redress of their injuries, and Jedson will reap the unjust benefits of violating the FLSA.

66. Furthermore, even if some of the Putative Class Members could afford individual litigation against Jedson, it would be unduly burdensome to the judicial system.

67. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

68. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

69. Among the common questions of law and fact are:

   a. Whether Jedson's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   b. Whether Jedson's violation of the FLSA was willful; and

   c. Whether Jedson's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

70. Wiggins' claims are typical of the claims of the Putative Class Members.

71. Wiggins and the Putative Class Members sustained damages arising out of Jedson's illegal and uniform employment policy.

72. Wiggins knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

73. Even if the issue of damages were somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## CAUSE OF ACTION
### VIOLATIONS OF THE FLSA

74. Wiggins brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

75. Jedson violated, and is violating, the FLSA by failing to pay Wiggins and the Putative Class Members overtime.

76. Jedson cannot demonstrate Wiggins and the Putative Class Members are exempt from overtime under the administrative exemption.

77. Jedson cannot demonstrate Wiggins and the Putative Class Members are exempt from overtime under the executive exemption.

78. Jedson cannot demonstrate Wiggins and the Putative Class Members are exempt from overtime under the professional exemption.

79. Jedson cannot demonstrate Wiggins and the Putative Class Members are exempt from overtime under the highly compensated exemption.

80. Jedson failed to guarantee the Plaintiff and Putative Class Members a salary.

81. Jedson failed to pay the Plaintiff and Putative Class Members overtime at the rates required by the FLSA.

82. Jedson paid the Plaintiff and Putative Class Members straight time for overtime.

83. Jedson knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

84. Jedson's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

85. Accordingly, Wiggins and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

86. Wiggins hereby demands a trial by jury.

## PRAYER

Wiggins prays for relief as follows:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding Jedson liable for unpaid back wages due to Wiggins and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Donna J. Mikel*
**Donna J. Mikel, #020777**
**MIKEL & HAMILL**
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
423-541-5400 – Telephone
423-541-5401 – Facsimile
dmikel@mhemploymentlaw.com

**AND**

**Michael A. Josephson**
TX Bar No. 24014780
(*pro hac vice application forthcoming*)
**Andrew W. Dunlap**
TX Bar No. 24078444
(*pro hac vice application forthcoming*)
**Taylor A. Jones**
TX Bar No. 24107823
(*pro hac vice application forthcoming*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
TX Bar No. 24001807
(*pro hac vice application forthcoming*)
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**