UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

| | |
|---|---|
| JEREMY WIGGINS, Individually and For Others Similarly Situated,<br><br>v.<br><br>JEDSON ENGINEERING, INC., | No. 1:19-CV-00354-DCLC-CHS<br><br>Judge Clifton L. Corker<br>Magistrate Judge Christopher H. Steger |

**JOINT MOTION TO APPROVE SETTLEMENT
AND TO DISMISS LAWSUIT WITH PREJUDICE**

Plaintiff Jeremy Wiggins ("Wiggins"), individually and on behalf of Opt-In Plaintiff Daniel (Shane) Garrett ("Garrett") (together, "Plaintiffs") and Defendant Jedson Engineering, Inc. ("Jedson") (collectively, "the Parties"), by and through their undersigned counsel, respectfully move this Court for an Order approving the terms of the Parties' Settlement Agreement (the "Agreement") and to dismiss this case with prejudice. Further, because the Agreement is confidential, the Parties respectfully request the Court authorize them to submit the Agreement for the Court's *in camera* review, so as to preserve the confidentiality of the same. In support of this Motion, the Parties state as follows:

**BACKGROUND**

Wiggins filed this action on December 10, 2019 alleging violations of the Fair Labor Standards Act ("FLSA"). ECF 1. On December 11, 2019, Garrett joined this case by filing his consent with the Court. ECF 6. On August 27, 2020, the Court conditionally certified a collective class of "[a]ll employees who worked in Tennessee for Jedson and were paid at the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or, "straight time for overtime") in the last 3 years." ECF 53 at PageID #370.

In response to the Court narrowing the class definition to employees who worked for

Jedson in Tennessee, Jedson informed Plaintiffs it "has not had any employee work in Tennessee in the last 3½ years" as of date the Court conditionally certified the putative class. Exhibit 1 (Jedson's Sept. 3, 2020 Email). Thus, the sole possible class members are Plaintiffs, as any other Jedson employees who worked in Tennessee's claims would be outside the 3-year statute of limitations. *Id.*; *see also* 29 U.S.C. § 255(a).

Based on this limitation, on September 10, 2020, the Parties moved to stay this case for 30 days to allow them to engage in settlement negotiations for Plaintiffs' claims. ECF 54. The Court granted the Parties' request and stayed this matter until October 13, 2020. ECF 55. On October 13, 2020, the Parties requested a brief one-week extension of the stay in order to continue their arms' length settlement negotiations. ECF 56. The Court granted the Parties' request and extended the stay until October 20, 2020. ECF 57.

After over a month of arms' length negotiations, the Parties reached a settlement and executed the Agreement setting forth all of the terms of the agreed-upon settlement. The Parties now seek approval of the Agreement.

## LEGAL STANDARD

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Estes v. Vanderpool Constr. & Roofing, Inc.*, No. 2:17-CV-058, 2018 WL 3910999, at *1 (E.D. Tenn. July 30, 2018) (Corker, M.J.), *report and recommendation adopted*, No. 2:17-CV-58, 2018 WL 3910889 (E.D. Tenn. Aug. 15, 2018) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the

settlement for fairness.")). As this Court has recognized, in making this determination, courts consider the following:

> that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime. *Rotuna v. W. Customer Mgmt. Group LLC*, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000) (further citation omitted)). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citing *Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. [footnote omitted] *Crawford*, 2008 WL 4724499, at *3 (citing *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

*Id.* at *2 (quoting *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *3 (N.D. Ohio May 16, 2016)) (alterations in *Estes*); *see also Brown v. Henley Propane, Inc.*, No. 4:20-CV-7, 2020 WL 4597077, at *1 (E.D. Tenn. Aug. 11, 2020) ("Factors relevant to finding a settlement fair, reasonable, and adequate include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.").

As demonstrated *infra*, the Parties' Agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions[,]" *Lynn's Food Stores*, 679 F.2d at 1355, thus the Court should approve the Agreement in full.

### THE PARTIES' SETTLEMENT RESOLVES A *BONA FIDE* DISPUTE

Here, the Parties fiercely contested the claims and defenses asserted in this lawsuit. Indeed, the claims here involve numerous complex and contested issues of fact and law. Specifically, Plaintiffs allege Jedson paid them straight time for overtime in violation of the FLSA, and that

because Jedson did not pay them on a salary basis, they were non-exempt employees entitled to overtime at 1½ times their regular rates of pay for any hours they worked in excess of 40 in a single workweek. ECF 1; ECF 29; ECF 30; ECF 36; ECF 48. Further, Plaintiffs alleged Jedson's violation of the FLSA was not made in good faith but rather was willful and, therefore, the 3-year statute of limitations apply to their claims, and they are entitled to liquidated damages. *Id.*

Conversely, Jedson denies it has engaged in any unlawful conduct, but rather asserts it paid Plaintiffs a salary and properly classified them as exempt employees. ECF 33. Jedson further denies that any alleged violation was willful and, therefore, the 2-year statute of limitations applies, and Plaintiffs' claims are time-barred. *Id.*; ECF 22; ECF 23; ECF 32; ECF 40; ECF 42; ECF 43; ECF 50. Defendant denies liability, damages entitlement and calculations, and disputes the timeliness of some of Plaintiff's claims.

Indeed, Plaintiffs believe they would prevail on the merits, either at trial or through motion practice, and Jedson similarly believes it would prevail on the merits, either at trial or through motion practice. In short, a *bona fide* dispute existed.

**THE PARTIES' AGREEMENT IS REASONABLE AND SHOULD BE APPROVED**

The Parties' extensive arms'-length negotiations lasting over a month ultimately resulted in the Parties' Agreement that they respectfully request the Court approve. Here, all the relevant factors support approval of the Parties' Agreement.

1. Factors 1 (risk of collusion) and 5 (Plaintiffs' Counsel opinion) support approval.

Importantly, throughout the settlement process, the Parties were each represented and assisted by attorneys extremely experienced in prosecuting/defending FLSA actions, including collective and class actions. Thus, throughout the settlement process, "the [P]arties were each represented by experienced and reputable counsel, ensuring that the employee's interests were

4

adequately protected from any overreaching." *Thompson v. United Stone, LLC*, No. 1:14-CV-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (Collier, J.). Because both Parties were represented by counsel "who are experienced in handling wage and hour collective actions[] throughout the litigation … there is … little risk the settlement was the result of fraud or collusion." *Id.* Further, based on their substantial experience prosecuting and defending FLSA cases, Plaintiffs' Counsel believes the Agreement is fair, adequate, and reasonable for Plaintiffs. These factors support approval. *Id.*

    2.    <u>Factors 2 (complexity and expense of continued litigation) and 3 (discovery completed) support approval.</u>

Prior to their settlement negotiations, the Parties conducted substantial formal and informal discovery, including both Parties serving, responding to, and supplementing their responses to Interrogatories, Requests for Production, and Requests for Admission. Through this discovery, Jedson produced *inter alia* Plaintiffs' payroll records, timesheets, offer letters, job descriptions, and relevant corporate policies. Likewise, relying on the payroll records and timesheets Jedson produced, Plaintiffs provided Jedson with their calculation of Plaintiffs' damages and the formula they utilized to calculate the same, as well as other pertinent discovery-related items. Thus, the Parties and their counsel were intimately familiar with the facts of the case, as well as well-versed in the law relevant to the complex issues this case presented, such as FLSA exemptions, the salary basis requirements, willfulness, and good faith. Further, prior to their settlement negotiations, the Parties discussed and independently analyzed this information for purposes of calculating the risks and rewards of continuing litigating this matter.

During the stay, the Parties exchanged settlement offers and demands and repeatedly conferred via phone and email until they reached a final settlement to resolve their *bona fide* dispute.

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Had the Parties been unable to settle this matter, they would be forced to engage in costly additional discovery, including depositions of Plaintiffs and Jedson's corporate representative(s) pursuant to FED R. CIV. P. 30(b)(6). Likewise, continuing to litigate this case would result in extensive motion practice, including potential motions for decertification, summary judgment, and motions related to any discovery disputes that may arise. Thus, continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources.

The Parties' Agreement, therefore, avoids potentially costly litigation spanning months (or perhaps years), and the Parties clearly benefit from the surety of recovery under the Agreement. Settlement is thus appropriate, and the Court should not needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. These factors support approval.

3. <u>Factor 4 (likelihood of success on the merits) supports approval.</u>

As explained *supra*, the Parties' settlement provides surety of recovery to Plaintiffs. Likewise, as demonstrated herein, the Parties hotly contested the merits of Plaintiffs' claims and Jedson's defenses. Indeed, while Plaintiffs maintain their factual and legal positions are viable, if Plaintiffs were ultimately unable to demonstrate Jedson's alleged violation of the FLSA was willful, then they would not be entitled to any recovery whatsoever. *See* 29 U.S.C. § 255(a). Likewise, while Jedson maintains its factual and legal positions are viable, if Jedson were unable to carry its burden of demonstrating Plaintiffs were paid on a salary basis and properly classified as exempt employees, there would be no dispute that Plaintiffs were entitled to, but not paid, overtime at time-and-a-half. This factor supports approval.

4. <u>Factors 5 (Plaintiffs' opinions) and 6 (reaction of absent class members) support approval.</u>

The Agreement impacts only the Plaintiffs' claims, as only Plaintiffs affirmatively joined this lawsuit and agreed to be represented by Plaintiffs' Counsel by filing their consent with the Court. ECF 1-1; ECF 6. No other individuals will be bound by the Agreement. This means that there are no absent class members who will be impacted by the Agreement, rendering the sixth factor irrelevant. Finally, Plaintiffs both executed the Agreement, finding it a reasonable compromise of their claims against Jedson. These factors support approval.

The Agreement provides for payments to the Plaintiffs in a manner negotiated by the Parties. Specifically, the Agreement provides the Net Settlement Amount shall be divided between Plaintiffs on a *pro rata* basis, based on their respective damages. Under the Agreement, Plaintiffs will receive 85% of their 3-year FLSA damages. Further, the amount of compensation under the Agreement reflects many difficult legal and factual issues that arose in this litigation, including the information exchanged and considered by the Parties. Thus, the Parties' Agreement represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1354.

5. <u>Factor 7 (public interest) supports approval.</u>

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] the district court [may] approve the settlement … to promote the policy of encouraging settlement of litigation." *Brown*, 2020 WL 4597077, at *2 (alterations in *Brown*). Here, because the Parties' Agreement is a fair and reasonable compromise of their FLSA dispute, this factor supports approval.

7

Case 1:19-cv-00354-DCLC-CHS   Document 63   Filed 12/10/20   Page 7 of 15
PageID #: 396

# PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

Under the Parties' Agreement, Plaintiffs' Counsel's separately negotiated attorneys' fees constitute 40% of the Gross Settlement Amount and will compensate Plaintiffs' Counsel for their efforts prosecuting and litigating this case from its initiation through and including finalizing the Agreement and drafting and filing the instant Motion. The Parties agreed that the fee is reasonable, and that Plaintiff is not required to separately petition this Court for approval of the fee.

The FLSA has a mandatory fee-shifting provision providing that the prevailing party shall recover reasonable attorneys' fees and costs. 29 U.S.C. § 21(b) (providing that courts "*shall*, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of action."). The FLSA fee award "encourages the vindication of congressionally identified policies and rights[,]" and therefore should be determined without "plac[ing] an undue emphasis on the amount of the plaintiff's recovery." *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994); *see also Brown*, 2020 WL 4597077, at *2.

"Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Importantly, Plaintiffs' Counsel are "entitled to a fee paid out of the common fund for the benefit of [Plaintiffs]." *Salinas v. U.S. Xpress Enter., Inc.*, No. 1:13-CV-00245-TRM-SKL, 2018 WL 1477127, at *8 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, No. 1:13-CV-00245-TRM-SKL, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980)). Under such circumstances, "the Supreme Court has indication that computing fees as a percentage of the common fund recovered is the **proper** approach." *Id.* (emphasis added) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)). Finally, "[e]ven in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees." *Id.* at *9 (noting "[t]he

8

lodestar method … remains *disfavored*" and collecting cases rejecting the lodestar method (emphasis in original)).

The Eighth Circuit recently held that not only was approval not required, "the district court's authority [of an FLSA settlement] did not extend beyond concluding the merits settlement was satisfactory." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The Eighth Circuit noted the parties' agreement on the issue was conclusive unless there was some reason to believe the fees had some "bearing on whether the employer has adequately paid its employees in a settlement." *Id.*

This makes perfect sense given that nothing in the language of 29 U.S.C. § 216(b) requires "approval of attorney fees." *Id*. The "FLSA's underlying purpose" is, after all, "protecting workers' rights," not ensuring defendants have fairly compensated plaintiffs' counsel. *Id.* (quoting and citing *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015)); *but see In re Chickie's & Pete's Wage & Hour Litig*., No. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) ("In FLSA cases, judicial approval of attorneys' fees is necessary [in part] to assure … that counsel is compensated adequately"). As a result, the "Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *Id.*

Should the Court reject *Barbee*'s holding that district courts need not analyze an attorneys' fee award if it finds the settlement reasonable, courts in this District may consider several factors, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount

9

involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Salinas*, 2018 WL 1477127, at *9.

    1.    <u>Factors 1 (time expended), 4 (preclusion of other employment), 7 (limitations cause be representation), and 11 (length of client relationship) support approval.</u>

As outlined *supra* and as reflected by the many docket entries associated with this case, Plaintiffs' Counsel expended significant time and effort litigating and resolving this case. Indeed, this case has been pending for slightly more than a year, during which the Parties conducted substantial formal and informal discovery, engaged in significant motion practice on various issues, including jurisdiction, willfulness, affirmative defenses, and certification. Of course, the docket entries don't reflect the time spent negotiating the settlement and finalizing the Agreement at issue. Further, prior to bringing this case, Plaintiffs' Counsel spent significant time meeting with Plaintiffs, reviewing documents, investigating Jedson and its industry, and researching the relevant law. Indeed, Plaintiffs' Counsel has represented Plaintiffs for over a year, primarily litigating the instant action on their behalf. These significant investments of Plaintiffs' Counsel's time and effort in turn caused them to be unable to take other cases while working on this case. Accordingly, these factors support approval of Plaintiffs' Counsel's fees.

    2.    <u>Factors 2 (novelty of questions), 3 (skill required), 9 (experience and reputation), and 10 (undesirability of the case) support approval.</u>

While FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate. Here, Plaintiffs' Counsel's skill, experience and reputation support the requested fee. Indeed, Plaintiffs' Counsel has served as lead counsel in numerous large-scale wage-and-hour class/collective actions across the country. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in

favor of defendant); *Roussell v. Brinker Int'l, Inc.*, No. 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

Further, Plaintiffs' Counsel's skill, knowledge, reputation, and experience are well-recognized in FLSA cases such as this. Plaintiffs' Counsel have considerable experience prosecuting and settling FLSA cases, and in this case, were particularly well-informed as to the facts and circumstances of the litigation and the risk of not prevailing at trial. FLSA collective action cases are the main focus of Plaintiffs' Counsel's docket. Although lead Plaintiffs' Counsel is based in Texas, both Josephson Dunlap and Bruckner Burch PLLC have a national docket of FLSA cases, with litigation in almost every state in the country. In recent years, Plaintiffs' Counsel's joint docket includes over 250 cases involving collective-action claims.

Plaintiff's Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. Plaintiff's Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary for the successful prosecution of FLSA collective actions such as this. Indeed, as one court expressly noted regarding Plaintiff's Counsel, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton v. Right Turn Supply, LLC*, No. 2:19-CV-01271-NR, 455 F. Supp. 3d 202, 207 (W.D. Pa. Apr. 23, 2020) (finding Plaintiffs' Counsel as "competent counsel" and emphasizing Plaintiffs' Counsel have "conducted themselves professionally, demonstrated deep knowledge of

11

wage-and-hour law, and have been diligent and responsive to the Court's orders."). In all, Plaintiff's Counsel has secured millions of dollars in settlements in FLSA cases for their clients.

In this case, Plaintiffs' Counsel skill and experience was extremely useful, as the case involved multiple complex and highly intensive factual and legal issues, such as salary basis questions, exemptions, willfulness claims, personal jurisdiction. For this same reason, the difficulty associated with this case rendered this case undesirable, as it would require significant knowledge of and experience in both nuanced and novel jurisdictional issues as well as FLSA exemptions, including the salary components and requirements. Accordingly, these factors support approval of Plaintiffs' Counsel's fees.

       3.      <u>Factors 6 (fixed or contingent fee) and 8 (results obtained) support approval.</u>

Plaintiffs' Counsel represented Plaintiffs on a contingent basis and invested considerable time and resources litigating this case and negotiating with Jedson, all with no guarantee of recovery. Despite these significant risks, all benefits obtained by Plaintiffs through the Parties' settlement can be attributed to the efforts of Plaintiffs' Counsel, rather than to government agencies or other groups. Indeed, as outlined *supra*, Plaintiffs' Counsel was able to obtain a very favorable result for Plaintiffs resulting in Plaintiffs recovering approximately 85% of their alleged 3-year FLSA damages *after* attorneys' fees and costs are deducted from the Gross Settlement Amount. Accordingly, these factors support approval of Plaintiffs' Counsel's fees.

       4.      <u>Factors 5 (customary fee) and 12 (similar awards) support approval.</u>

Here Plaintiffs' Counsel's requested 40% fee is customary and representative of awards in similar FLSA actions in this District. *See*, *e.g.*, *Salinas*, 2018 WL 1477127, at *7-9 (approving a 40% attorneys' fee award). Indeed, in the Sixth Circuit, "[t]he percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund." *Combs v. Trugreen Ltd.*

*P'ship*, No. 1:08-CV-489, 2010 WL 11636094, at *8 (S.D. Ohio. Sept. 2, 2010) (collecting cases). Notably, Plaintiffs' private agreements with Plaintiffs' Counsel provide for a 40% fee award. Accordingly, because Plaintiffs' Counsel's requested 40% fee is customary and representative of awards in similar FLSA actions, these factors support approval of Plaintiffs' Counsel's fees.

### THE COURT SHOULD REVIEW THE PARTIES' AGREEMENT *IN CAMERA*

The Parties request an *in-camera* review of the confidential Agreement, a copy of which is being separately sent to chambers. As noted *supra*, the Parties' Agreement is confidential, and the Parties agree that confidentiality of the Agreement is a material term. Indeed, the Parties specifically negotiated confidentiality as part of their Agreement. Thus, in order to preserve the confidentiality of the Parties' Agreement, the Parties respectfully request the Court review the Parties' Agreement *in camera*.

Courts in this Circuit routinely permit parties in FLSA cases to submit their agreement separately from their Motion to Approve, *see*, *e.g.*, *Thompson*, 2015 WL 867988, at *1, including for *in camera* review, *see*, *e.g.*, *Nutting v. Unilever Mfg. (U.S.) Inc.*, No. 2:14-CV-2239, 2014 WL 2959481, at *1 (W.D. Tenn. June 13, 2014).

Here, submitting the Parties' confidential Agreement for an *in-camera* review protects the Parties' interests by protecting confidential financial information and upholding the public policy of the confidentiality of settlement discussions. Indeed, the Agreement reveals the amount Jedson has agreed to pay Plaintiffs to resolve their FLSA claims. Jedson's industry, however, is highly competitive. Records reflecting how much Jedson is paying could potentially be used by competitors seeking to gain a competitive advantage. Because of these concerns, confidentiality was a key term negotiated in the Agreement. Further, permitting the Parties to submit their

Agreement *in camera* also advances the public interest because it encourages settlement negotiations and agreements and preserves judicial resources.

Accordingly, the Parties respectfully request the Court permit them to submit their Agreement for an *in-camera* review.

## THE COURT SHOULD DISMISS THIS CASE WITH PREJUDICE

Under the terms of the Parties' Agreement, the Parties shall dismiss this case with prejudice once the Court approves their Agreement. Accordingly, the Parties respectfully request the Court dismiss this case with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should (1) approve the Parties' Agreement, including approval of Plaintiffs' Counsel's attorneys' fees, (2) permit the Parties to submit their confidential Agreement for an *in-camera* review to preserve its confidentiality, and (3) dismiss this case with prejudice. A proposed Order is submitted.

**Dated: December 10, 2020.**

**RESPECTFULLY SUBMITTED AND AGREED TO BY:**

Dated: December 10, 2020

**JOSEPHSON DUNLAP**

*/s/ Taylor A. Jones*
**Michael A. Josephson***
TX Bar No. 24014780
**Taylor A. Jones***
TX Bar No. 24107823
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
tjones@mybackwages.com
**Pro Hac Vice*

**Donna J. Mikel**, BPR No. 20777
**MIKEL & HAMILL**
620 Lindsay Street, Ste. 200
Chattanooga, TN 37403
Phone: 423-541-5400
Fax: 423-541-5401
dmikel@mhemploymentlaw.com

**ATTORNEYS FOR PLAINTIFFS**

Dated: December 10, 2020

**MILLER & MARTIN PLLC**

*/s/ Scott E. Simmons (with permission)*
**John R. Bode**, BPR No. 11415
**Bradford G. Harvey**, BPR No. 17393
**Scott E. Simmons**, BPR No. 29392
**MILLER & MARTIN PLLC**
Suite 1200, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402
Phone: (423) 756-6600
Fax: (423) 785-8480
john.bode@millermartin.com
brad.harvey@millermartin.com
scott.simmons@millermartin.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

On December 10, 2020, I served a copy of this document on all registered parties and/or their counsel of record via this Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Taylor A. Jones*
**TAYLOR A. JONES**